UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Karla J. P., | No. 22-cv-2131 (WMW/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi,<br>Acting Commissioner<br>of Social Security, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Karla P. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 16–17 (Plaintiff's motion and supporting pleadings), 19–20 (Commissioner's motion and supporting pleadings), 21 (Plaintiff's reply memorandum).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons which follow, the Court recommends that Plaintiff's Motion be granted, Defendant's Motion be denied, and the matter be remanded for further proceedings consistent with this Recommendation.

## BACKGROUND

On July 14, 2019, Karla P. applied for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she had been disabled since January 1, 2019. (Tr.[1] at 371.) The Social Security Administration ("SSA") denied her initial claim and her request for reconsideration. (Tr. at 191, 200, 204.) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on December 10, 2021. (Tr. at 51.) Plaintiff was represented by counsel, appeared at the hearing, and testified on her own behalf. (*Id.*) At the hearing, Plaintiff amended the alleged onset date of disability to January 17, 2017. (Tr. at 30, 58.) A vocational expert also testified, opining that there were jobs on the national economy that were suitable for a person with physical and mental limitations like Plaintiff's. (Tr. at 68–70.) Plaintiff's attorney asked the vocational expert how certain additional physical limitations would impact a person with physical limitations like Plaintiff but did not address any mental limitations. (Tr. at 71–72.)

On December 21, 2021, the Commissioner sent a notice of an unfavorable decision to Plaintiff. (Tr. at 27–43.)  The ALJ recognized that Plaintiff suffered from several severe impairments: degenerative disc disease of the cervical spine; hypertension; obesity; left

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on October 31, 2022. (Docs. 12 (Part 1), 13 (Part 2).) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

distal clavicle osteolysis; major depressive disorder; generalized anxiety disorder; and adjustment disorder. (Tr. at 32–33.)

Despite Plaintiff's physical and mental impairments, the ALJ found that she did not qualify for benefits. (Tr. at 27.) First, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light exertional work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[2] To determine how much less than the full range of light work Plaintiff could perform, the ALJ credited the testimony of the vocational expert that there were at least three representative occupations which were listed in the Dictionary of Occupational Titles ("DOT") that a person with similar limitations to Plaintiff could perform: marker (DOT 209.587-034); mail clerk (DOT 209.687-026); and photocopying machine operator (DOT 207.685-014). (Tr. at 42.) Because there were sufficient jobs available on the national economy for someone with Plaintiff's limitations, the ALJ found her not disabled under the evaluative process outlined in 20 C.F.R. §§ 404.1520 and 416.920. (Tr. at 31.)

Plaintiff contests the ALJ's determination that the prior administrative medical findings from state agency psychologist Dennis Andersen, MA, LP, were only partially persuasive without providing an adequate explanation why. Mr. Andersen opined that

---

[2] By regulation, "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). *See also* 20 C.F.R. § 416.967(b). Even if the weight lifted is very little, "a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). *See also* 20 C.F.R. § 416.967(b).

3

Plaintiff's "ability to maintain adequate vocational behavior is limited. She would have problems remembering needed tasks and . . . [s]he is isolated socially and would have difficulty relating effectively to coworkers and supervisors." (Tr. at 653.) The ALJ found, however, that Plaintiff could perform "simple routine tasks in a low stress work environment with no production rate pace or quota requirements; occasional interaction with co-workers; [and] no interaction with the public." (Tr. at 36.) According to Plaintiff, the ALJ inexplicably failed to credit Mr. Andersen's conclusions about the limitations on Plaintiff's type of workplace interactions, and therefore erred by not including those limitations when constructing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520c, 416.920c (mandating the factors that an ALJ must consider in a written decision when finding prior administrative medical findings (un)persuasive).

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support (or

detract from, as the case may be) the ALJ's conclusion. *Id.*; *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). Where substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ improperly evaluates the persuasiveness of prior administrative medical findings, that is a legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022) (and harmless error analysis). *Cf. Austin*, 52 F.4th at 727–29.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4)[3] for evaluating SSI and DIB claims. Rather, she asserts that in determining her RFC, the ALJ inexplicably omitted certain limitations recommended by a state psychological expert, resulting in an RFC that did not reflect her actual impairments, and did so without the explanation legally required under

---

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–v), (d–e); 416.920(a)(4)(i–v), (d–e).

5

20 C.F.R. §§ 404.1520c and 416.920c. Specifically, Mr. Andersen opined that Plaintiff would have "problems remembering needed tasks and . . . [s]he is isolated socially and would have difficulty relating effectively to coworkers and supervisors." (Tr. at 653.) The ALJ found, however, that Plaintiff could tolerate "simple routine tasks in a low stress work environment with no production rate pace or quota requirements; occasional interaction with co-workers; no interaction with the public; off task 10% of the time during an 8-hour workday due to mental impairments . . . ." (Tr. at 36.) The ALJ was silent on Plaintiff's workplace interactions with supervisors. (*See id.*) Plaintiff contends that the ALJ's determination of her RFC based on these inconsistencies with the record—and failure to adequately explain why she was only partially persuaded by Mr. Andersen's findings on Plaintiff's social limitations as to its supportability and consistency according to 20 C.F.R. §§ 404.1520c and 416.920c—constitute legal error that is not harmless.

Plaintiff filed her claim on July 15, 2019, so 20 C.F.R. §§ 404.1520c and 416.920c govern how an ALJ evaluates prior administrative medical findings of state agency psychologists. *See Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020) (discussing that 20 C.F.R. § 404.1520c applies to the consideration of prior administrative medical findings for DIB claims filed on or after March 27, 2017); *Andrew H. S. v. Kijakazi*, No. 20-cv-1553 (SRN/HB), 2022 WL 409954, at *9 (D. Minn. Jan. 24, 2022), *R. & R. adopted*, 2022 WL 409951 (D. Minn. Feb. 10, 2022) (discussing that 20 C.F.R. § 416.920c applies to the consideration of prior administrative medical findings for SSI claims filed on or after March 27, 2017). The regulations require that an ALJ consider a number of factors, but

6

prioritize the factors of supportability and consistency as the most important. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).

While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729. But at the very least, the regulations require that the ALJ explain how they considered the supportability and consistency factors in evaluating a psychological expert's prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michael B.*, 2022 WL 4463901, at *2 (failure to articulate supportability analysis is a legal error that requires remand); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency with the record is a legal error that requires remand). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Here, the ALJ's conclusions related to psychological expert Mr. Dennis Andersen's prior administrative medical findings are confusing. While the ALJ came to puzzlingly inconsistent conclusions regarding Plaintiff's memory limitations,[4] the real issue lies in her conclusion regarding Plaintiff's workplace interactions. The ALJ found that Mr. Andersen's findings about Plaintiff's difficulty with supervisors were "inconsistent with evidence of a cooperative attitude and normal eye contact," but did little to explain why. (Tr. at 40 (citing Tr. at 547, 578, 642, 703, 793, 808).) Additionally, the ALJ did not genuinely discuss why she accepted Mr. Andersen's conclusion that Plaintiff would have difficulties with coworkers, but dismissed the conclusion that Plaintiff would struggle with supervisor interactions. (Tr. at 40.)

For her part, the Commissioner argues that the ALJ correctly applied the revised medical evidence regulations in concluding that Mr. Andersen's prior administrative medical findings were not supported by his examination of Plaintiff and were not entirely supported by the record. According to the Commissioner, it is enough that there was "substantial evidence" to support the ALJ's determination that Mr. Andersen's findings were only partially persuasive.

The Court disagrees that the ALJ provided the explanation legally required by 20 C.F.R. §§ 404.1520c and 416.920c. Specifically, the ALJ did not discuss why "evidence of findings of abnormal mood" was consistent with difficulties relating to coworkers, but

---

[4] The Court construes Plaintiff's discussion of the internal inconsistency of the ALJ's conclusions about Plaintiff's memory limitations as a critique of the ALJ's credibility, not a claim of legal error for failing to address the factors of supportability and consistency according to 20 C.F.R. §§ 404.1520c and 416.920c.

8

not with "difficulties relating to supervisors." (Tr. at 40.) Furthermore, the ALJ did not address why evidence of a "cooperative attitude and normal eye contact" was inconsistent with "difficulties relating to supervisors," but was not inconsistent with Plaintiff's difficulties relating to coworkers. (*Id*.) Finally, the ALJ provided no explanation for her decision to omit a limitation for Plaintiff's workplace interactions with supervisors but to add a limitation for Plaintiff's workplace interactions with the public. (*See* Tr. at 35, 38, 39, 40.) Rather, the ALJ's decision merely recites summaries of certain treatment notes without explanation of how those portions of the record demonstrate a lack of support for, and consistency with, the experts' prior administrative medical findings, as is legally required by 20 C.F.R. §§ 404.1520c and 416.920c.

The Commissioner points to the ALJ's earlier discussion of the record to give a satisfactory explanation for the ALJ's conclusions, but this is problematic because, while an ALJ's opinion must be read as a whole, *see Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009), an ALJ still has a mandated duty to give an explanation that stands on its own under 20 C.F.R. §§ 404.1520c and 416.920c. *See also Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) ("While the Commissioner argues that Dr. Thompson's opinion was not consistent with specific other evidence in the record, we will not affirm on this basis, as the ALJ made no such findings."). In other words, even if there is substantial evidence on the record to support her conclusions, the ALJ must still provide a sufficient explanation about how she came to those conclusions when the question is what credence to give prior administrative medical findings. The issue is not whether the record substantially supports the ALJ's decision; the

issue is whether the ALJ legally erred by failing to follow her regulatory mandate under 20 C.F.R. §§ 404.1520c and 416.920c because she did not provide an explanation that included the factors of supportability and consistency when discounting Mr. Andersen's prior administrative medical findings.

Even turning to the records that the Commissioner points to earlier in the ALJ's decision to explain why the ALJ was unpersuaded by Mr. Andersen's findings, the Court fails to discern the reason why the ALJ did not include limitations for memory and workplace interactions with supervisors but added—without the expert's suggestion—limitations for workplace interactions with the public. The ALJ pointed out that there was conflicting evidence regarding Plaintiff's memory, stating "[Plaintiff] reported forgetfulness and needing . . . reminders to take care of personal needs . . . [and that] consistent with this, one examiner noted below average recall." (Tr. at 35 (citing Tr. at 455, 457, 573, and 500, 510, 513, 548, 703, 808).) The ALJ likewise noted that "[Plaintiff] also reported that she read books and is able to drive a car. In addition, doctors found intact or normal memory during examinations." (Tr. at 35 (citing Tr. at 455, 456 497, 524, 578, 642, 703, 793, 808).) The ALJ also noted that there was conflicting evidence about Plaintiff's behavior in social interactions, stating "[m]ental status evaluations reveal tearfulness, sad affect, and anxious and depressed mood," (Tr. at 35 (citing Tr. at 510, 522, 524, 532, 703,793, 808)), but Plaintiff "reported she generally gets along with others, including authority figures." (*Id*. (citing Tr. at 459, 547).) Similarly, the ALJ observed that the "medical record reveals findings of normal mood and affect, cooperative attitude, and good

10

eye contact, indicating she retains some ability in this area of mental functioning." (Tr. at 35 (citing Tr. at 517, 641, 650, 743).)

None of these summaries of the record by the ALJ provides support for the ALJ's decision to reject the psychological expert's conclusion. The summaries do not explain why there should be no limitation for memory, and no limitation on the Plaintiff's workplace interactions with supervisors, but a complete limitation on workplace interaction with the public.

Finding error in the ALJ's partial rejection of expert prior administrative medical findings does not end the matter, however. "A plaintiff bears the burden of demonstrating that an agency's error is harmful." *Christopher J. B. v. Kijakazi*, No. 20-cv-2631 (JFD), 2022 WL 2806374, at *7 (D. Minn. July 18, 2022) (citing *Shinseki v Sanders*, 556 U.S. 396, 409 (2009); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). This means that Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917.

If Plaintiff has additional limitations as to memory and workplace interactions with supervisors as set forth by Mr. Andersen,[5] it is unclear whether the DOT jobs put forth as possible for Plaintiff to perform would remain available to her. *See, e.g.*, *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (where a court cannot determine whether the ALJ would have reached the same conclusion absent legal error, the error cannot be treated as

---

[5] To be clear, the Court is not finding that Mr. Andersen's assessment of Plaintiff's memory and interpersonal limitations *must* be accepted, but only that the ALJ must fully consider Mr. Andersen's conclusions consistent with the applicable regulations.

11

harmless). The ALJ's hypotheticals posed to the vocational expert about possible work in the national economy only asked the expert to account for the limitations of a person "able to perform simple, routine tasks in a low stress work environment, with no production rate pace or quota requirements . . . [where] [t]he individual can have occasional interaction with coworkers, but no interaction with the public[.]" (Tr. at 68.) The ALJ did not pose any questions to the vocational expert about memory limitations or limitations on workplace interactions with supervisors. With an incomplete record on the effect of Plaintiff's social interaction limitations, the Court cannot find the ALJ's error in discounting the psychological expert's prior administrative medical findings without sufficient explanation (and potentially misstating the Plaintiff's RFC) harmless.

## RECOMMENDATION

Based on the above findings, as well as the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 16) be **GRANTED**;

2. Defendant's Motion for Summary Judgment (Doc. 19) be **DENIED**; and

3. The matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Recommendation.

DATED: July 5, 2023

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).